UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

MICHAEL DEAN DREW,

CASE NO. 3:12-cr-76-J-PCH-JRK

# PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Robert E. O'Neill, United States Attorney for the Middle District of Florida, and the defendant, MICHAEL DEAN DREW, and the attorney for the defendant, Ronald W. Maxwell, Esq., mutually agree as follows:

A. **Particularized Terms**

1. **Count Pleading To**

The defendant shall enter a plea of guilty to Count Two of the Indictment. Count Two charges the defendant with mailing a threatening letter, in violation of 18 U.S.C. § 876(c).

2. **Maximum Penalties**

Count Two carries a maximum sentence of up to 10 years imprisonment, a fine of $250,000, or both, a term of supervised release of not more than 3 years, and a special assessment of $100, said special assessment to be due on the date of sentencing. With respect to certain offenses, the Court

Defendant's Initials M.D.

AF Approval (PF (FSA PLA3)

shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3. Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

First: That the Defendant deposited or caused to be deposited in the mail, for delivery by the United States Postal Service, a true threat to kidnap or injure someone, as charged in the indictment;

Second: That the Defendant did so knowingly.

4. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

5. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-

Defendant's Initials  m.θ.                                 2

level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b), the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

6. Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and

Defendant's Initials M.O.

all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials __m.o.__          4

7. Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

B. **Standard Terms and Conditions**

1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987), including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

Defendant's Initials _m.g._    5

2. Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit, upon execution of this plea agreement, an affidavit reflecting the defendant's financial condition. The defendant further agrees, and by the execution of this plea agreement, authorizes the United States Attorney's Office to provide to, and obtain from, the

Defendant's Initials m.v.

6

United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

4.  Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence,

Defendant's Initials __m.O.__  7

whether or not such decision is consistent with the government's recommendations contained herein.

5. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

6. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials _m.θ._        8

7. Filing of Agreement

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

8. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those

Defendant's Initials  m.ϑ.

9

rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

9. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

10. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials  m.&.            10

11. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this __24__ day of August, 2012.

ROBERT E. O'NEILL
United States Attorney

*Michael Drew*
MICHAEL DEAN DREW
Defendant

By: *Mark B Devereaux*
MARK B. DEVEREAUX
Assistant United States Attorney

*Ronald W Maxwell*
RONALD W. MAXWELL
Attorney for Defendant

MAC D. HEAVENER, III
Assistant United States Attorney
Deputy Chief, Jacksonville Division

Defendant's Initials __m.d.__

11

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  Case No. 3:12-cr-76-J-PCH-JRK

MICHAEL DEAN DREW

## PERSONALIZATION OF ELEMENTS

1. Did you, on or about September 16, 2011, at Martin County, in the Southern District of Florida, at Duval County, in the Middle District of Florida, and elsewhere, deposit or cause to be deposited in the mail, for delivery by the United States Postal Service, a true threat to injure someone, as charged in the Indictment?

2. Was the individual that you threatened to injure a United States judge?

3. Did you do so knowingly?

Defendant's Initials M.D.

12

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                  Case No. 3:12-cr-76-J-PCH-JRK

MICHAEL DEAN DREW

_____

## FACTUAL BASIS

### Drew's Florida State Prison Sentence

Michael Dean Drew ("Drew") is an inmate in the Florida Department of Corrections, currently scheduled for release on April 8, 2034. Drew is serving a 30 year sentence for his conviction for trafficking in stolen property, burglary of a dwelling, escape, and grand theft of a motor vehicle.

### Filing in Federal Court in Jacksonville

On April 5, 2006, Drew filed a pro se Petition for Habeas Corpus under 18 U.S.C. § 2254 claiming: 1) Counsel failed to object to the jury taking transcript of recorded statement into jury room during deliberation; and 2) Counsel was ineffective, failing to give special instruction during jury charge conference. Drew's Habeas Corpus petition was subsequently assigned to TJC, a United States District Court Judge assigned to the Jacksonville Division of the Middle District of Florida. TJC denied Drew's Habeas Corpus petition on September 1, 2009.

Defendant's Initials  M.D.

## Threat Against TJC

On or about September 20, 2011, a United States District Court law clerk retrieved the daily mail from the mail room at the Federal Courthouse, Jacksonville, Florida. Contained within the mail was an envelope addressed to:

Hon. TJC (US Dist Judge)
United States District Court
Middle District of Florida (Suite 9-150)
300 N. Hogan St.
Jacksonville Division
Jax., Fla 32202

The return address was:

Michael D. Crew #297013
Martin Correctional Institution
Law Library
1150 SW Allapattah Road
Indiantown, FL 34956
**Legal Mail**

There was a postmark of September 16, 2011, Martin C.I. on the envelope. The letter inside the envelope was addressed to "Hon. Zionist Swine (TJC)". In substance the letter threatened the life of the Hon.TJC. In pertinent part the letter stated:

- "I realize that by the time I finish my state sentence 6/10/2034, your swine ass will be dead."

- "So, I've taken the liberty to put a contract out on your ass."

- "I promise to see you dead or damn near dead."

- "If I cant get you, your family is just as good."

Defendant's Initials  m.⊖.      2

Also, Drew references the "Judgment in a Civil Case". Drew expressed his anger and belief that by dismissing his motion, TJC arbitrarily ruined his life and a shot at freedom. Drew signed the letter. Upon receiving the threatening letter, the law clerk provided the letter to TJC who contacted the United States Marshals Service.

**Drew Interview**

On October 27, 2011, Special Agents of the Federal Bureau of Investigation (FBI) interviewed Drew at Martin Correctional Institution. Drew was provided with an "Advice of Rights" form, which he signed and agreed to answer questions without an attorney present.

Drew was presented two letters, one addressed to TJC, and the other addressed to AM, an Assistant State Attorney that had also received a threatening letter from Drew. Drew confessed to drafting and mailing the letters, and initialed and dated each letter in acknowledgment of that fact. Drew advised he had no intention of following through with the threats, and that he was merely venting. Drew stated he was denied an evidentiary hearing, which would have given him a chance to return to Jacksonville, Florida. Drew advised that his primary motivation has always been to transfer to a facility near Jacksonville, Florida, for a chance to see his dying mother. Drew apologized for wasting law enforcement resources regarding this incident.

Defendant's Initials  m.ʋ.    3

Drew stated that he has no means of following through with the threats, nor is he in contact with anyone who can carry out his threats. Drew acknowledged that sending the letters was a bad idea, and that he was just very angry. Drew stated "I'm here I'm stuck, I'm living with it. I'm done". Drew stated that he just wanted to scare them, and he has no means of communication. Special Agents also took major case finger prints and a DNA swab from Drew.

**Under- Cover Investigation**

Following Drew's interview by FBI Special Agents, an inmate (cooperating inmate) at Martin Correctional Institute whom was acquainted with Drew came forward to prison officials. The cooperating inmate claimed that Drew solicited his assistance in a murder for hire scheme involving TJC and an Assistant State Attorney. In response to this information, the FBI introduced an Under-Cover Agent (UCA) into the situation, who made contact with Drew. During three recorded conversations, Drew made several statements about soliciting someone to murder TJC and the Assistant State Attorney. However, each time the UC attempted to discuss moving beyond talk and taking an overt act, nothing happen. Drew claimed he had money to hire someone and folks whom would help him. Drew never came through with the money and the folks purportedly involved had no meaningful or current connection to Drew, when interviewed by the FBI. Eventually, other inmates came forward stating that Drew and the cooperating inmate were involved with a scheme. Specifically, since Drew was

Defendant's Initials _m.D._    4

in prison for 30 years, he didn't care if he got more time. Thus, he agreed that the cooperating inmate could come up with this story, so that Drew would get sent to Federal Court in Jacksonville to be closer to his dying mother. As for the cooperating inmate, he was hoping to receive a reduction in his sentence.

Based upon this information, Special Agents interviewed various inmates and returned to interview Drew on March 20, 2012. After waiving his rights in writing, Drew agreed to speak with the agents. During the interview Drew reiterated his prior statements about writing the letters. However, he claimed that the cooperating inmate "sold him a pipe dream." Drew thought that by writing the letters and making the statements about getting someone killed, he'd get to Jacksonville to be close to his dying mother. He apologized for "wasting everyone's time" and stated he didn't mean it. He was simply upset about his situation and his mother's circumstances.

Defendant's Initials  M.D.      5